## John C. Russell *v.* The State.

1. SELF-DEFENSE — THREATS — EVIDENCE.— To a prosecution for homicide the defendant interposed the plea of self-defense based upon threats made by the deceased to the defendant in person, prior to the homicide, and also upon previous difficulties between the parties. *Held*, that under such plea, the defendant, in order to show whether or not the grounds for fearing death or serious bodily harm were reasonable, was entitled to lay before the jury all circumstances which would go to show the character of the threats, the intention with which they were made, and the grounds of fear on which the defendant acted, and hence evidence of previous affrays, difficulties, attacks and threats are admissible.

2. SAME.— See the opinion *in extenso* for rule laid down defining the relevancy of evidence of previous threats, affrays, etc., and the extent to which such evidence is admissible in a trial for homicide.

3. SAME.— However remote from the main issue in point of time, place, or other circumstances, a fact may be, if relevant, and tending to explain the main issue, the safer practice is to admit evidence thereof, leaving the question of its weight to the jury. See the opinion for discussion of the rule.

4. EVIDENCE.— It being testified by a witness that, immediately preceding the homicide, the defendant and himself increased their speed to avoid the deceased who was in pursuit, it was proposed to prove by the witness that the defendant proposed to increase their speed in order to escape a difficulty with the deceased. *Held*, that the exclusion of this evidence was error.

5. SEPARATION OF JURY — PRACTICE.— The jury in this case returned their verdict in the absence of the defendant, and separated. The court, discovering the absence of the defendant, and having retained possession of the verdict, called the jury together, and had the verdict read in the presence of the defendant. *Held*, that such irregularity of practice constitutes no ground for reversal.

6. SAME — NEW TRIAL.— Separation of the jury will authorize a new trial, only when it appears that the jury have been tampered with, or may have been tampered with.

7. EVIDENCE OF GENERAL CHARACTER of the deceased as a peaceable, inoffensive man, and one not reasonably likely to execute previous threats, is available to the prosecution when the defendant seeks to justify homicide on the ground of threats, whether the defendant has or has not put the general character of the deceased in issue.

APPEAL from the District Court of Williamson. Tried below before the Hon. W. A. BLACKBURN.

The indictment charged the appellant jointly with W. R. Russell, with the murder of John Lawrence, in Williamson county, Texas, on the 14th day of May, 1881. The trial of the appellant at the July term, 1881, of the District Court, resulted in a verdict of manslaughter, with the punishment assessed at two years in the penitentiary.

It was testified on behalf of the State, by three witnesses, that they left the Lawrence Chapel in Williamson county, on the night of the homicide, in company with the deceased. That they had proceeded some distance up the road when they heard hallooing ahead, which deceased declared to proceed from the appellant and his brother William. The deceased left the witnesses, saying that he would ride on and see what they wanted. When the witnesses reached the parties they were fighting,

knocking and striking each other, the deceased engaged on one side, and the defendant and his brother on the other. The defendant, after several blows had been exchanged, dismounted and caught the bridle of deceased's horse, and stooped towards the ground as though to pick up a stick. The horse jumped towards the defendant. The defendant avoided the horse, and fired four shots, the last taking effect, from which the deceased died. This is substantially the State's narrative of the occurrences at the time of the killing.

For the defense it was testified by a sister of appellant, that, some time before the homicide, the deceased told her that he intended to kill her brothers William and the appellant; that he would rather kill them than any men he had ever seen; which threats she communicated to her brothers as soon as she next saw them. By two of appellant's sisters, two of his brothers and Miss Woods, it was testified that the parties named and the appellant, when returning from the Lawrence Chapel, on the Saturday night preceding the shooting, in a wagon, were overtaken by the deceased on horseback. The deceased cursed and abused the appellant, denounced him as a coward, challenged him to fight, applied grossly approbrious epithets to him, insulted the ladies under his charge, assaulted his team to the great danger of the occupants of the wagon, and, declaring his intention to kill the appellant, put his hand once behind him. William Russell, who had been previously acquitted upon the same indictment, testified that on their return home from the chapel on the night of the killing they were overtaken by the deceased, who commenced a tirade of abuse, and finally assaulted the appellant by striking him. A fist fight ensued between the parties, provoked by the assault of deceased, during the course of which, after the appellant had dismounted, the deceased jumped his horse at the appellant and threw his hand behind him. The appellant

avoided the horse and opened fire on the deceased. This witness testified also that during a previous dispute between appellant and deceased the latter threw his hand behind him and said that he had "a d—d good six-shooter, and would show it if appellant desired to see it." He testified, also, that when they became aware that they were pursued by the deceased, on the night of the shooting, they increased the speed of their horses to avoid a collision with deceased.

Evidence was also introduced impeaching the reputation of the principal witness for the State for truth and veracity, and to show statements by two witnesses for the State, made elsewhere, which were inconsistent with certain parts of their testimony on the trial. The defense introduced several witnesses who testified to the good character sustained by the appellant as a peaceable and law-abiding man.

*Chessher & Belcher* and *T. P. Hughes*, for the appellant.

*Horace Chilton,* Assistant Attorney General, for the State.

HURT, J. The appellant was convicted of manslaughter. There are quite a number of assignments made by counsel for appellant. We will not discuss them *seriatim,* believing that a proper solution of two questions will dispose of most of the errors assigned.

The plea of defendant was self-defense, under threats and former difficulties. The threats were made by deceased against the life of defendant, and were communicated, as well as made by deceased, to him prior to the homicide. Bearing upon the question as to whether the grounds for fearing death or serious bodily harm were *reasonable,* defendant had the right to lay before the jury all circumstances which go to show the character of the

threats, the intention with which they were made, and the grounds of fear on which the defendant acted. Evidence, therefore, of previous affrays, difficulties, attacks and threats is admissible, being light by which the jurors are to view the acts and intentions of the parties at the time of the homicide. Nor must the evidence stop with proving merely that these affrays, difficulties and attacks had occurred between the parties; the character of these affrays, etc., may be shown. The rules, we think, upon this subject are these: 1st. All that was said or done, or that which occurred at the time of the homicide, tending in the slightest degree to explain the transaction, or the conduct or motives of the parties, is admissible. What was said or done or occurred at the time is relevant to the main fact (the homicide fact). 2d. All facts necessary to be known to explain or introduce a fact *in issue*, or *relevant*, or deemed to be relevant to the issue, or which support or negative a reference suggested by any such fact; or which are necessary to show the relevancy of other facts; or which explain, modify or give character to the main fact or a relevant fact, are admissible.

To present the subject in another light: The main fact was its *res gestæ*, so called, which are the facts and circumstances immediately hovering around and directly connected with it,— occurring at the time and place of the main fact. There are facts which do not form a part of the immediate surrounding facts, but are relevant to the main fact, or to these or some of these immediate facts. To this class belong threats, former difficulties, affrays and attacks; also motive. This enumeration is for illustration, not for the purpose of naming *all* this class of facts. These facts, though *not occurring* at the time of the homicide, being relevant to the main or some other relevant fact, have their *res gestæ*, so called. The deceased threatened defendant; what were the facts and circumstances attending these threats? They had engaged

in former difficulties; what were the circumstances which surrounded the difficulties, and which were calculated to give character thereto? And so a *fact which did not oc-cur at the time of the threats or difficulties* may be rele-vant thereto; and it with its *res gestœ* be drawn into and made a matter of inquiry, and so on until the light grows so dim or uncertain as to render such facts irrelevant. Just here is presented a very nice question indeed, which is this: A fact being relevant, but, owing to its remote-ness in point of time, place, or other circumstances, its weight is not clearly appreciable;—must the judge reject or admit the fact? Some authorities hold that the judge may, when thus so remote, fix a limit, though the fact is relevant, and reject the evidence. We think, however, if the fact is relevant the safer and more satisfactory rule is for the judge to admit the evidence and leave the ques-tion of its weight to the jury; for so far as the judge deals with the question of its weight he interferes with the legal prerogative of the jury. If, however, these re-mote facts (though relating to the main fact or a relevant fact) have *no tendency* to explain or elucidate, then the judge, to prevent the intrusion of foreign issues, and to economize the time of the court, should reject them.

But let us return to the reason of the rule which admits these remote facts,— facts which do not properly con-stitute the *res gestœ* of the main fact, but are clearly admissible to elucidate the main or a relevant fact. Why are they admissible? The answer to our mind is very evident. The issue being: "had the defendant reasonable grounds for fearing death or serious bodily harm?", to decide this question correctly, the exact relations of the parties to one another, their feelings toward each other and their motives should be known by the jury. These being understood, an act, gesture or word which was spoken or done at the homicide, is viewed and weighed in the light of these remote relevant facts, as well as the im-

mediate facts. These immediate facts are not only seen in the light of their surroundings, but are weighed and passed upon under the rays emanating from light drawn from facts occurring prior to, and sometimes great distances from the time and place of the homicide. An illustration here, we think, is proper. A. and B. are in an altercation. B. throws his hand behind him to his hip pocket. A. shoots and kills him. The quarrel and act of B. constitute all of the immediate facts attending the killing. The killing under the circumstances would be thought, by an honest jury, a wanton and unprovoked murder. That to shoot down a fellow man because he merely put his hand behind him, or in his pocket, was simply an outrage upon humanity as well as law. But, suppose that B. had been breathing out threats against the life of A.,—had been the aggressor in a number of difficulties with him, in which he had shown himself a violent and dangerous man, and so on,—this apparent harmless movement of the hand, viewed in the light of these facts (though not occurring at the time), assumes quite a different shape and proportions. It is not that accidental or insignificant thing as was supposed when seen in the light of the facts which immediately attended it; but may be pregnant not only with apparent but actual danger to the life of A. The admissibility of a fact is quite a different thing from its sufficiency. We are passing upon its competency, not its weight or conclusiveness,—this is the work of the jury.

These remote facts, to wit, the threats, difficulties and affrays, being of so much importance, then their character should be thoroughly understood by the jury. If they were not serious the apprehensions of defendant would not be so well founded; but if they were grave his fears would be found reasonable; hence, to determine the gravity, all of the facts — the threats, the manner, the pressure, the occasion — in fact, every thing done by the parties,

or any other person, tending to show the character of these threats, difficulties and affrays, should be presented to the jury. This was done in this case, as will appear by a number of bills of exceptions.

It appears from the statement of facts that, just before the killing, deceased overtook defendant, and that he cursed and abused defendant; dared him to come back, stated that he would maul hell out of him, etc. This is the account given by Wm. Russell, a brother of defendant. The deceased's account is, that the Russell boys, when he overtook them, cursed him. Carter, a witness for the State, heard two "voices cursing each other." When Carter and others overtook deceased, he had just separated with the Russell boys, and said they were down there in the road cursing him, and that he was going down after them, and loped off. Wm. Russell states that when they heard deceased come running after them that they increased their speed to a gallop towards home. Defendant proposed to prove by Wm. Russell that he, defendant, then said, "I heard John Lawrence coming; let us gallop up, I don't want to have any difficulty with him." This was objected to by the State, and the objections were sustained by the court, and defendant reserved his bill. This was error. This evidence was very evidently admissible, There could have been but one objection to it, and that is that it may have been manufactured by the defendant, and made self-serving declarations. This all may be true, but if all evidence which *may have been manufactured for the occasion* is to be rejected, we fear that the limits would be very narrow indeed. The court below admitted the fact that they increased their speed to a gallop. This was an act, and if the act was evidence, certainly what was said at the time in reference to the act was also admissible. These facts were so closely connected with other acts and the killing, in point of time, as to constitute *res gestœ*, so called. It is not probable that defend-

ant knew that deceased would overtake him and that he would kill him, and that to justify himself he concocted this evidence. Time is of vital importance as bearing upon the question as to whether the declarations be self-serving or spontaneous. But if spontaneous (and this is to be determined by all of the facts), it is admissible, though there may have been opportunity to manufacture the facts sought to be introduced.

The separation of the jury after they had returned their verdict (the defendant not being present) is no such irregularity as will authorize a reversal of the judgment. The jury returned their verdict, which was received in the absence of defendant, and they separated, when the court discovered that defendant was absent; the jury was called together (the judge keeping the verdict in his possession all the while), and the verdict was read in the presence of defendant. There can be but two reasons why a verdict should be set aside when a separation of the jury has taken place. 1st. That the jury have been tampered with, or, 2d, might have been tampered with. Here the record precludes any such supposition. Graham & Waterman on New Trials, vol. 2, p. 550.

The defendant seeking to justify on the grounds of threats, the State had the right to prove that the general character of deceased was that of an inoffensive man, and that he was not such a person as might reasonably be expected to execute the threats. This the State could prove, where defendant makes this defense, notwithstanding defendant introduced no evidence touching the character of deceased. Penal Code, art. 612.

The other errors complained of will not arise on another trial, and will not be discussed here. For the errors above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*